UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KEVIN GURLEY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:11-CV-1304-NAB |
| CAROLYN W. COLVIN[1], | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Kevin Gurley's ("Gurley") application for Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. § 1381a. Gurley alleges disability due to hepatitis C, seizure history, staph infections, major depressive disorder, anxiety, and degenerative disc disease of the thoracic and lumbar spine. [Doc. 1.] The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). [Doc. 6]

**I.    PROCEDURAL HISTORY**

On November 14, 2008, Gurley filed an application for SSI benefits. (Tr. 115-117.) The Social Security Administration ("SSA") denied Gurley's claim and he timely filed a request for hearing before an administrative law judge ("ALJ"). (Tr. 66-70, 71-73.) The Social Security Administration granted Gurley's request and the hearing took place on November 13, 2009.

---

[1] At the time this case was filed, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Carolyn W. Colvin for Michael J. Astrue in this matter.

(Tr.111, 31-62.) The ALJ issued a written decision on December 23, 2009, upholding the denial of benefits. (Tr. 19-27.) Gurley requested review of the ALJ's decision from the Appeals Council. (Tr. 14.) On June 23, 2011, the Appeals Council denied Gurley's request for review. (Tr. 1-6.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Gurley filed this appeal on July 27, 2011. [Doc. 1.] The Commissioner filed an Answer. [Doc. 12] Gurley filed a Brief in Support of the Complaint. [Doc. 16] The Commissioner filed a Brief in Support of the Answer. [Doc. 17.]

The Court has reviewed the parties' briefs, the ALJ decision, the record including the hearing transcript and medical documentary evidence. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## II.   The ALJ's Decision

The ALJ determined that Gurley had not engaged in substantial gainful activity since October 31, 2008. (Tr. 21.) The ALJ also determined that Gurley had the following severe impairments of Hepatitis C, seizure history, staph infections, drug dependence, major depressive disorder, anxiety, and degenerative disc disease of the thoracic and lumbar spine. (Tr. 21.) The ALJ found that Gurley did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 23.) The ALJ also found that Gurley had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 416.967(b), except he could not climb ropes, ladders, and scaffolds; only occasionally climb ramps and stairs; occasionally stoop and crouch; avoid concentrated exposure to vibration and hazards of heights; and limited to simple, non-detailed tasks, with no constant or regular contact with the general public, no working in an environment with controlled substances, and no working around food products. (Tr. 24.) The

ALJ determined that Gurley was unable to perform any of his past relevant work, but considering his age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Gurley can perform. (Tr. 26.) Finally, the ALJ concluded that Gurley has not been under a disability as defined in the Social Security Act, since October 31, 2008. (Tr. 27.)

## III. Standard of Review

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § 416.920. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § 416.920(a)(4)(i),(b). Second, the claimant must have a severe impairment. 20 C.F.R. § 416.920(a)(4)(ii),(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." *Id.* The impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § 416.920(a)(4)(iii),(d), Part

3

404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. 20 C.F.R. § 426.920(d).

Fourth, the impairment must prevent claimant from doing past relevant work.[2] 20 C.F.R. § 416.920(e). At this step, the burden rests with the claimant to establish his or her Residual Functional Capacity ("RFC"). *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008). *See also Eichelberger*, 390 F.3d at 590-91; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 416.945(a) and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 416.945(b)-(e). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 416.920(e). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. 20 C.F.R. § 416.920(a)(4)(iv),(f). If the claimant cannot perform past relevant work, the analysis proceeds to Step five.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. 20 C.F.R. § 416.920(a)(4)(v). At this step, the Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. *Warner v.*

---

[2] Past relevant work is work [done] within the last 15 years, that was substantial gainful activity, and that lasted long enough for [claimant] to learn to do it. 20 C.F.R. § 416.960(b)(1).

*Heckler*, 722 F.2d 428, 431 (8th Cir. 1983). If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Id*. *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004).

This court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

## IV. Discussion

Gurley alleges three errors on review. First, Gurley states that the ALJ failed to evaluate and explain which severe impairments caused the limitations identified in the RFC. Second, Gurley asserts that the RFC is conclusory, fails to refer to any supporting evidence, and is not supported by substantial evidence. Third, Gurley asserts that the ALJ did not provide a rationale for assessing no weight to the opinions of Dr. Asher and Dr. Berg, his treating physicians. The Commissioner contends that the ALJ's decision is supported by substantial evidence in the record as a whole.

### A. Severe Limitations and Impairments

Without citing any supporting case law, Gurley contends that the ALJ's decision should be reversed to identify which limitations are caused by each impairment listed in the RFC. Gurley has not indicated that he disagrees with the ALJ's determination of severe impairments or any of the limitations that were included in the RFC. The ALJ discussed Gurley's physical and medical impairments in detail, including citation to the medical evidence in the record. (Tr. 21-25.) For example, the ALJ determined that Gurley could perform light work, which involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. 416.967(b), (Tr. 23-24.) The Physical RFC Questionnaire completed by Dr. Daniel Berg and cited by the ALJ, indicates that Gurley could frequently lift and carry 10 pounds frequently and 20 pounds occasionally. (Tr. 677.) The ALJ also determined that Gurley could never climb ropes, ladders, or scaffolds and only occasionally climb ramps or stairs, stoop, or crouch. (Tr. 24.) Again, this is consistent with Dr. Berg's Physical RFC Questionnaire. (Tr. 678.) The ALJ found that Gurley had severe impairments of major depressive disorder and

anxiety. (Tr. 23.) The RFC includes the limitation that Gurley have no constant or regular contact with the general public. (Tr. 24.) Gurley has a history of substance abuse and the RFC includes the limitation that he not work around controlled substances. (Tr. 21-25.) The Court will not address each impairment and RFC limitation in this order, but it is clear that the ALJ's RFC limitations were supported by substantial evidence in the record as a whole. It appears that Gurley wants the ALJ to format his opinion to explicitly match the severe impairment to each RFC limitation. In this case, the ALJ drafted a detailed summary of the medical evidence and then addressed the RFC limitations in a separate section of his opinion. Based on the foregoing, the Court finds that the ALJ's opinion clearly indicates the medical evidence relied upon to support the limitations in the RFC and reversal on this basis is not required.

    **B.**    **RFC Determination**

Next, Gurley asserts that the RFC is not supported by substantial evidence, because it is conclusory and does not reference any supporting evidence. RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 416.945. The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[1] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citing *Lauer v. Apfel*, 245

---

[1] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

7

F.3d 700, 704 (8th Cir. 2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

In this case, the Court disagrees that the ALJ's decision is conclusory and fails to cite supporting evidence. As stated above, the ALJ summarized Gurley's medical evidence in detail and that evidence is consistent with the limitations in the RFC. (Tr. 21-25.) Gurley asserts that there was no medical evidence supporting the RFC limitation to light work, because the ALJ's citation to the state agency evaluator's opinion that Gurley could perform light work is not substantial evidence. The ALJ's citation to the record shows that he did not rely solely upon the state agency evaluator's opinion that Gurley could perform light work, because the ALJ also cited to Dr. Berg's opinion that Gurley could perform the requirements of light work. (Tr. 23, 25, 677.) The ALJ's opinion also relied on Dr. Jaron Asher's opinion regarding Gurley's mental impairments. (Tr. 22-23, 25.) "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). The Court finds that the ALJ's opinion provides sufficient evidentiary support for the RFC determination. Based on a review of the medical evidence in the record, the Court finds that the RFC is supported by substantial evidence in the record as a whole.

### C. Opinions of Dr. Berg and Dr. Asher

Finally, Gurley contends that the ALJ's decision should be reversed for failure to explain why the ALJ gave no weight to the opinions of Dr. Asher and Dr. Berg. In making a disability

8

determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R. § 416.927(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2); SSR 96-2p; *see also Hacker*, 459 F.3d at 937. When given controlling weight, the ALJ defers to a treating physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). "A medical source opinion that an applicant is disabled or unable to work, however, involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." *Ellis*, 392 F.3d at 994. The Eighth Circuit has also upheld an ALJ's decision to discount or disregard a treating physician's opinion where other medical assessments in the record are supported by better or more thorough medical evidence, *see Rogers v. Chater,* 118

F.3d 600, 602 (8th Cir. 1997), or where a treating physician renders inconsistent opinions, *see Cruze v. Chater,* 85 F.3d 1320, 1324-25 (8th Cir. 1996).

First, contrary to Gurley's assertions, the Court finds that the ALJ gave some weight to Dr. Asher and Dr. Berg's opinions. The ALJ's decision specifically states that Dr. Berg's opinion was given "limited weight," because his opinion that Gurley would miss four days of work was unsupported in the record. (Tr. 25.) The ALJ also specifically stated that Dr. Asher's "medical source statement cannot be full[y] credited as it is inconsistent with the entries in his progress notes. The progress notes do not reflect as severe a condition with such limitation as are contained in the November 2009 statement." (Tr. 25.) Although the ALJ did not give controlling weight to the opinions, it is clear that he did not completely discount them either.

Second, the ALJ explained the reasons why portions of the doctors' opinions were not entitled to controlling weight. The ALJ determined that specific findings of Dr. Asher and Dr. Berg's opinions conflicted with other evidence in the record. (Tr. 25.)

For example, the ALJ determined that Dr. Asher's 2009 medical source statement was inconsistent with his treatment records. Gurley began mental health treatment at Family Care Health Centers in January 2009. He initially met with Licensed Clinical Social Worker Rockey Sieben, who diagnosed him with Major Depressive Disorder with psychotic features not otherwise specified and assessed him with GAF[3] scores between 47-49 in January and February 2009. (Tr. 614, 616-618.) Mr. Sieben then, upon consultation with Dr. Gandi, referred Gurley to Dr. Jaron Asher for psychiatric treatment. (Tr. 618.) Upon his initial assessment on February 23, 2009, Dr. Asher opined that Gurley was opiate dependent in early remission and depressed with psychosis. (Tr. 610.) Dr. Asher assessed Gurley's GAF as 50. (Tr. 610.) Gurley cancelled

---

[3] Global Assessment Functioning score is a "clinician's judgment of the individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000) ("DSM-IV-TR").

his next scheduled appointments with Dr. Asher and Mr. Sieben between February and June 2009. (Tr. 658-659.) Between August 2009 and August 2010, Dr. Asher diagnosed Gurley with opiate dependence on methadone[4] or subxone[5] and depression with psychosis with GAF scores between 52 and 53. (Tr. 646, 697, 700.) Between September 2010 and December 2010, Dr. Asher diagnosed Gurley with bipolar disorder not otherwise specified and opiate dependence on methadone or suboxone with GAF scores between 52 and 53. (Tr. 689, 694, 696.) A GAF score between 51 and 60 indicates some moderate symptoms or moderate difficulty in social, occupational, or school functioning, *e.g.*, occasional panic attacks, few friends, conflicts with peers or co-workers. DSM-IV-TR at 34.

Dr. Asher completed a Mental RFC Questionnaire on November 4, 2009. (Tr. 682-687.) In the Questionnaire, Dr. Asher indicated that Gurley was opiate dependent on methadone with depression and psychosis. (Tr. 682.) Dr. Asher also indicated that Gurley had a GAF of 53, which was the highest GAF score he had in the past year. (Tr. 682.) Dr. Asher's sole clinical finding that demonstrated the severity of Gurley's symptoms was Gurley "can't concentrate." (Tr. 682.) Dr. Asher stated that Gurley's prognosis was guarded. (Tr. 682.) Dr. Asher noted that Gurley was limited but could satisfactorily (1) understand, remember, and carry out short and simple instructions, (2) ask simple questions or request assistance, (3) accept instructions and respond appropriately to criticism from outsiders, (4) be aware of normal hazards and take appropriate precautions, (5) maintain socially appropriate behavior, and (6) adhere to basic standards of neatness and cleanliness. (Tr. 684-685.) Dr. Asher stated that Gurley would be seriously limited, but not precluded from (1) making simple work related decisions,

---

[4] Methadone is a synthetic narcotic drug used as a withdrawal treatment in morphine and heroin addiction. Stedman's Medical Dictionary 1103 (27th ed. 2000).
[5] Suboxone is a medication "approved for the treatment of opiate dependence." U.S. Food and Drug Administration, http://www.fda.gov/Drugs/DrugSafety/PostmarketDrugSafetyInformationforPatientsandProviders/ucm191523.htm (last visited April 30, 2013).

11

(2) performing at a consistent pace without an unreasonable number and length of rest periods, (3) getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, (4) responding appropriately to changes in a routine work setting, (5) dealing with normal work stress, (6) interacting appropriately with the general public, (7) traveling in an unfamiliar place, and (8) using public transportation. (Tr. 684-685.) Dr. Asher also stated that that Gurley was unable to meet competitive standards in (1) remembering work like procedures, (2) maintaining attention for two-hour segment, (3) maintaining regular attendance and be punctual within customary usually strict tolerances, (4) sustaining an ordinary routine without special supervision, (5) working in coordination with or proximity to others without being unduly distracted, (6) completing a workday or workweek without interruptions from psychologically based symptoms, (7) understanding, remembering, and carrying out detailed instructions, (8) setting realistic goals or making plans independently of others, and (9) dealing with stress of semiskilled and skilled work. (Tr. 684-685.) Dr. Asher opined that "[Gurley] can't work due to poor concentration, can't remember how to do his job. His concentration is impaired by paranoid thoughts." (Tr. 686.) Dr. Asher opined that Gurley would be absent from work more than four days per month due to his impairments or treatment. (Tr. 686.)

The Court finds that the ALJ's determination to give limited weight to Dr. Asher's medical source statement was supported by substantial evidence in the record as a whole. Dr. Asher's treatment notes indicate that during Gurley's visits, he was depressed and anxious, but his insight and judgment was fair, and his thoughts were goal directed. (Tr. 646, 689, 694, 696, 697, 700.) The medical records from Dr. Asher do not mention an inability to concentrate or any memory problems due to his paranoia, as indicated in the medical source statement. (Tr. 646,

12

689, 694, 696, 697, 700.) Also, the GAF scores given by Dr. Asher indicate only moderate limitations of functioning. Because Dr. Asher opined that Gurley could not work "due to poor concentration" and inability to remember work procedures, the ALJ could give limited weight to Dr. Asher's opinion based on the inconsistencies with the other evidence in the record.

Also, the Court finds that substantial evidence supports the ALJ's determination that Dr. Berg's opinion that Gurley would miss four days of work every month was unsupported by any evidence. Dr. Berg completed a Physical RFC Questionnaire for Gurley on October 19, 2009. (Tr. 675-678.) Dr. Berg noted that Gurley's prognosis was good. (Tr. 675.) In addition to meeting the lifting and carrying requirements of light work, Dr. Berg also noted that Gurley could sit or stand for 45 minutes before needing to change position and needed unscheduled breaks during the workday to walk every 45 minutes for five minutes. (Tr. 676-677.) Dr. Berg also noted that Gurley could frequently look down, turn his head both ways, look up, and hold his head in a static condition; walk or stand unassisted without any significant limitations in reaching, handling, or fingering. (Tr. 678.) Dr. Berg's treatment notes and the remainder of the medical record do not show any reasons why Gurley would need to miss work more than four days per month due to his impairments or treatment. To the contrary, the medical evidence shows that Gurley went without medical treatment for months at a time. Based on the foregoing, the Court finds that the ALJ could partially discount the weight given to Dr. Berg and Dr. Asher's opinions.

## V. Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Gurley's Complaint and Brief in Support of Complaint is **DENIED**. [Doc. 1, 16].

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Carolyn W. Colvin for Michael J. Astrue in the court record of this case.

A separate Judgment will be entered this date in favor of the Defendant.

Dated this 6th day of May, 2013.

                                                           /s/ Nannette A. Baker
                                                 NANNETTE A. BAKER
                                                 UNITED STATES MAGISTRATE JUDGE